No. 9　　　　September 7, 2018　　　　155

IN THE OREGON TAX COURT
REGULAR DIVISION

Charles CHRISTENSEN,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE
State of Oregon,
*Defendant.*

(TC 5285)

On cross-motions for summary judgment, the court agreed with the taxpayer that Oregon's Taxpayer Bill of Rights requires the director of the Department of Revenue (the department), or a delegate pursuant to ORS 305.057, to determine whether an installment agreement the taxpayer had proposed would "facilitate collection." *See* ORS 305.890(1). The court found that the director had failed to properly delegate his authority before a department employee rejected the taxpayer's proposal, and the director's later delegation did not render the failure moot. The court also concluded that the department was not required to promulgate administrative rules defining the term "facilitate collection" before making determinations.

Submitted on cross-motions for summary judgment.

Dominic V. Paris, London & Paris, LLP, Portland, filed the motion and argued the cause for Plaintiff (taxpayer).

James C. Strong, Assistant Attorney General, Department of Justice, Salem, filed the cross-motion and argued the cause for Defendant Department of Revenue.

Decision for Plaintiff rendered September 7, 2018.

**ROBERT T. MANICKE, Judge.**

## I.　INTRODUCTION

This is the court's second order in a case of first impression under Oregon's Taxpayer Bill of Rights (TBOR). The first order determined that a claim under the installment agreement provision of the TBOR, ORS 305.890(1), is within the court's jurisdiction.[1]　*See Christensen v. Dept. of*

---

[1] All references to the Oregon Revised Statutes (ORS) are to the 2015 edition. Although the tax years at issue in this case are 2009, 2010, 2011, and 2012, the determination under the TBOR was made in 2015.

*Rev.*, 22 OTR 384 (2017) (*Christensen I*). The court then dismissed Plaintiff's (taxpayer's) original complaint for failure to state ultimate facts sufficient to constitute a claim, but granted leave to file an amended complaint pursuant to Tax Court Rule (TCR) 21 A.

Taxpayer thereafter amended his complaint to raise five claims, all now before the court on cross-motions for summary judgment. The first three claims assert that Defendant Department of Revenue (the department) or its director failed to act in accordance with ORS 305.890(1) when the department's employees considered taxpayer's application for an installment agreement. The fourth and fifth claims assert that the department's written communications failed to notify taxpayer of certain rights in compliance with other provisions of the TBOR, ORS 305.860 and ORS 305.875.

## II.   FACTS

### A.   *Statutes at Issue*

The principal statutes at issue are three provisions of the TBOR, ORS 305.860, ORS 305.875, and ORS 305.890, as well as a separate statute relating to persons who may exercise powers granted to the department's director (ORS 305.057). All are reproduced below (all emphases added).

ORS 305.057:

"Whenever a power is granted to the Director of the Department of Revenue, the power may be exercised by such officer or employee within the Department of Revenue *as designated in writing by the director. Any such designation shall be filed in the office of the Secretary of State.*"

ORS 305.860:

"(1)   The Director of the Department of Revenue shall prepare a statement which sets forth in simple nontechnical terms:

"(a)   The rights of a taxpayer and the obligations of the Department of Revenue during an audit;

"(b)   *The procedures by which a taxpayer may appeal any adverse decision of the department, including informal conferences and judicial appeals*;

"(c)   The procedures for filing and processing refund claims and filing of taxpayer complaints; and

"(d)   The procedures which the department may use in enforcing the provisions of the laws of this state.

"(2)   The statement prepared in accordance with subsection (1) of this section shall be distributed by the Director of the Department of Revenue to all taxpayers upon request. The director shall inform taxpayers of their rights in a brief explanatory statement included in all billing or collection notices, all notices of assessment or deficiency and all notices of refund adjustment or denial sent to the taxpayer."

ORS 305.875:

"In any meeting or communication with the Department of Revenue, including but not limited to audits, conferences, interviews and any other meeting or communication between the taxpayer and the department, the taxpayer shall have the following rights, unless waived by the taxpayer:

"(1)   The right to an explanation, by an officer or employee of the department before or during the meeting of:

"(a)   The audit, conference or meeting process and the taxpayer's rights under such process; and

"(b)   The collection process and the taxpayer's rights under such process.

"(2)   The right to make an audio recording of any meeting relating to the determination or collection of any tax with the department representative, using the taxpayer's own equipment, and at the taxpayer's own expense.

"(3)   If the department makes an audio recording of the meeting, the taxpayer has the right to advance notice of the recording and a copy of the recording upon request. The taxpayer shall reimburse the department the reasonable cost of the copy.

"(4)   *The right to consult with an attorney, certified public accountant, enrolled agent, or an other person permitted to represent a taxpayer at any meeting before the department, if the taxpayer clearly states to the department representative at any time during any meeting, that the*

*taxpayer wishes to consult with the person. This subsection does not apply to a meeting initiated by an administrative subpoena.*

"(5)   The right to be represented by anyone who is permitted to represent the taxpayer before the department, as provided under ORS 305.230 and 305.245.

"(6)   The right not to be present, if represented, at the meeting unless subpoenaed by the department pursuant to ORS 305.190, or other laws of this state."

ORS 305.890:

"(1)   *A taxpayer shall have the right to enter into a written agreement with the Department of Revenue to satisfy liability for payment of any tax in installment payments if the Director of the Department of Revenue determines that the agreement will facilitate collection of such liability.*

"(2)   Except as otherwise provided in this section, any agreement entered into by the director under this section shall remain in effect for the term of the agreement.

"(3)   The director may terminate any agreement entered into by the director under this section if:

"(a)   Any information that the taxpayer provided to the director prior to the date the agreement was entered into was inaccurate or incomplete; or

"(b)   The director believes that collection of any tax to which an agreement under this section relates is in jeopardy.

"(4)   If the director makes a determination that the financial condition of the taxpayer with whom the director has entered into an agreement under this section has significantly changed, the director may alter, modify or terminate the agreement. Action may be taken by the director under this subsection only if:

"(a)   Notice of such determination is provided to the taxpayer within 30 days prior to the date of such action; and

"(b)   Such notice includes the reasons why the director believes a significant change in the financial condition of the taxpayer has occurred.

"(5)   The director may alter, modify or terminate an agreement entered into by the director under this section in the case of the failure of the taxpayer to:

"(a)   Pay any installment at the time such installment payment is due under such agreement;

"(b)   Pay any other tax liability at the time such liability is due; or

"(c)   Provide a financial condition update as requested by the director."

B.   *Stipulated Facts*

The parties stipulated to the following facts:

(1) "On March 17, 2015, following Plaintiff's failure to file tax returns, Defendant assessed tax, interest and penalties for tax years 2009 through 2012."

(2) "After it issued the assessments, Defendant mailed various collection notices to Plaintiff, specifically: 1) Notices and Demands for Payment; 2) Distraint Warrants and 3) Notice of Intent to Offset Federal Tax Refund."

(3) "Each of Defendant's collection notices included a document called 'Your Rights as an Oregon Taxpayer.'"

(4) "On behalf of Plaintiff, Plaintiff's attorney submitted a financial statement to Defendant on August 14, 2015, proposing monthly payments of $25 towards his tax liabilities."

(5) "On August 17, 2015, Defendant proposed a monthly payment of $658 for 12 months. On August 27, 2015, Defendant proposed that Plaintiff make a monthly payment of $450. On September 2, 2015, Defendant mailed a document titled 'Payment Agreement' to Plaintiff for $450 per month for 12 months. Plaintiff did not enter into the agreement."

(6) "The determination as to whether Plaintiff's requested installment agreement would facilitate collection was made by Department of Revenue employees. The Department's Director did not

personally determine whether the requested agree-
ment would facilitate collection."

(7) "Prior to considering Plaintiff's request for an install-
ment agreement, the Director of the Department
did not have a written delegation[2] on file with the
Secretary of State that explicitly referred to install-
ment agreements under ORS 305.890."

(8) "Defendant subsequently filed a written delegation
with the Secretary of State on January 14, 2016,
that refers to installment agreements under ORS
305.890." ("Delegation of Director's Powers" dated
November 5, 2013, stipulated to have been on file in
August and September 2015 (the 2013 Delegation));
("Delegation of Director's Powers" dated January
2016) (the 2016 Delegation).)

(9) "Defendant has not promulgated regulations setting
forth the criteria to be used in determining whether
an installment agreement will facilitate collection."

(10) "On October 9, 2015, Plaintiff appealed Defendant's
'Payment Agreement' to the Magistrate Division of
the Oregon Tax Court."

C.  *Proceedings in the Tax Court*

In the Magistrate Division, the department moved
to dismiss taxpayer's complaint for, among other reasons,
lack of subject matter jurisdiction. The magistrate agreed,
concluding that the court lacked subject matter jurisdiction
over collection matters, including requests for installment
agreements under ORS 305.890. That conclusion was in
accordance with prior Magistrate Division decisions.

Taxpayer appealed the magistrate's decision by fil-
ing a complaint in the Regular Division. The department
then moved to dismiss taxpayer's complaint for lack of sub-
ject matter jurisdiction and failure to state a claim. The
court denied the department's motion as to subject matter

---

² The parties generally use the term "delegation" to refer not only to the act
of authorizing another department employee to act for the director, but also to the
written "designation" of such employee required to be filed with the Secretary of
State under ORS 305.057.

jurisdiction, but granted it as to failure to state a claim, with leave to amend because this case raises issues of first impression. *Christensen I*, 22 OTR at 392-95. Taxpayer's amended complaint requests declaratory and injunctive relief based on the five claims discussed below.

D.   *Additional Evidence*

After filing a stipulation of certain facts, recounted above, the parties each moved for summary judgment on all claims. In his opening brief, taxpayer introduced two new documents, which he did not authenticate, but to which the department did not object. Taxpayer describes Plaintiff's Exhibit 1 as excerpts from a report that the Oregon Society of Certified Public Accountants submitted to the Oregon House Revenue and School Finance Committee on February 13, 1989 (the OSCPA Report). The court takes judicial notice of the entire OSCPA Report as part of the legislative history of the TBOR, and admits Exhibit 1 into evidence. Taxpayer's opening brief also proffered Plaintiff's Exhibit 2, entitled "Financial Statement Team Procedural Steps," as a document originating from the department, and the court admits Exhibit 2 into evidence without objection.

The department did, however, object to the admission of two unauthenticated exhibits attached to taxpayer's reply brief, proffered as Plaintiff's Exhibits 3 and 4. Taxpayer did not submit a written response to the department's objection, nor did taxpayer respond at oral argument.[3] The court declines to admit proffered Exhibits 3 and 4 into evidence and does not consider them further.

The department introduced declarations of department employees who authenticated two documents entitled "Policy and Administrative Procedure" (PAP), as well

---

[3] Taxpayer supplied no authenticating testimony and did not describe the nature of the documents, except to state in his reply brief that the department had produced them during discovery. Taxpayer purports to rely on them as acknowledgments by the department of inconsistent applications of the department's procedures. But the documents themselves supply no contextual data (*e.g.*, dates, authorship, letterhead, explanation of abbreviations and sentence fragments) that would authenticate them by their own appearance or substance. *See* OEC 901(2). Nor are they within any category of self-authenticating documents pursuant to OEC 902. Without any supporting evidence, such as witness testimony, the court has no assurance that the documents are what they are asserted to be.

as screen shots of an online "financial calculator" that the department uses. Taxpayer did not object to the declarations or to Defendant's Exhibits A through C, and the court admits them into evidence.

## III.   ISSUES

There are five issues in this case, corresponding with taxpayer's five claims:

(1) Whether the director failed to follow the delegation of authority requirements in ORS 305.057 and, by that failure, violated taxpayer's right under ORS 305.890(1) to enter into an installment agreement to pay tax he owed.

(2) Whether the department is required to promulgate administrative rules before the director can apply the term "facilitate collection" when reviewing applications for installment agreements. ORS 305.890(1).

(3) Whether in 2015 the director then in office erred in his consideration of certain specific terms that taxpayer requested in an installment agreement, and by making a counterproposal that would not "facilitate collection." ORS 305.890(1).

(4) Whether the department failed to notify taxpayer, in conformance with ORS 305.860, of his right to appeal the director's installment agreement determination.

(5) Whether the department failed to notify taxpayer, in conformance with ORS 305.875, of his rights during the collection process, including his right to an attorney.

## IV.   ANALYSIS

A.  *Summary Judgment Standard*

The court grants a motion for summary judgment only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." TCR 47 C. The court reviews the evidence, as it pertains to each party's cross-motion, "in

a manner most favorable to the adverse party." *Id.*; *see Two Two v. Fujitech America, Inc.*, 355 Or 319, 331, 325 P3d 707 (2014). The moving party is entitled to prevail as a matter of law only if no "objectively reasonable" factfinder could find for the adverse party. TCR 47 C.

B. *Taxpayer's First Claim: Delegation of Authority and Right to Installment Agreement*

Taxpayer's first claim asserts that the department violated his right under ORS 305.890(1) in 2015 when negotiating with taxpayer because (1) ORS 305.890(1) requires the "Director of the Department of Revenue" to determine whether any proposed installment agreement would "facilitate collection"; (2) the department's director then in office did not personally do so; and (3) the 2013 Delegation then on file with the Secretary of State failed to delegate authority, in a manner complying with ORS 305.057, to the department personnel who evaluated taxpayer's initial offer and who prepared and presented the department's counteroffers. ORS 305.057 provides that a department employee may exercise a power granted to the director if the employee is "designated in writing by the director." The statute also states that "[a]ny such designation shall be filed in the office of the Secretary of State." Taxpayer seeks a declaration of his rights and an injunction prohibiting the department from pursuing garnishment or asset seizure against taxpayer before offering him an installment agreement that has been determined to facilitate collection by a properly designated employee of the department.

The department does not argue the merits of taxpayer's first claim; nor, however, does the department fully acknowledge any failure to designate employees in accordance with ORS 305.057. Instead, the department asserts that the claim is moot because the director later filed the 2016 Delegation, approximately two months after taxpayer filed his complaint in the Magistrate Division. Taxpayer does not dispute that the 2016 Delegation fulfills the requirements of ORS 305.057 as to the department employees it designates, but he denies that the filing of that Delegation renders his first claim moot. The court will first consider the department's mootness argument.

1.  *Mootness*

A claim is moot if, due to a change in facts since the commencement of the action, the "'court's decision no longer will have a practical effect on or concerning the rights of the parties.'" *See Nordbye v. BRCP/GM Ellington*, 271 Or App 168, 178, 349 P3d 639 (2015) (quoting *Brumnett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993)); *State v. Lavitsky*, 158 Or App 660, 663, 976 P2d 82 (1999) ("[d]etermining whether a case is moot is part of a larger two-part inquiry into whether a case is justiciable" (citing *Brumnett*, 315 Or at 405)). Thus, even if a party may be able to sustain a claim, the court may refuse to rule on that claim because it would not affect rights between the parties. *See Barcik v. Kubiaczyk*, 321 Or 174, 188, 895 P2d 765 (1995); *see also Couey v. Atkins*, 357 Or 460, 470-71, 355 P3d 866 (2015) (rejecting claim for declaratory relief based on "contingent and speculative facts"). Whether a claim is moot depends on the requested relief supported by that claim, because it is the obtainable relief that has a practical effect on the parties, not the proving of the elements of a claim. *See Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982) ("A justiciable controversy results in specific relief through a binding decree as opposed to an advisory opinion which is binding on no one.").

The department argues that its filing of the 2016 Delegation was a change in circumstances that renders taxpayer's first claim moot, because that filing allows taxpayer the chance to seek an installment agreement determined by a department employee acting in conformance with ORS 305.890(1) and ORS 305.057.

With respect to declaratory relief, the department has not shown that the filing of the 2016 Delegation, by itself, was a sufficient change in circumstances. Both before and after the filing, the director could have made an appropriate determination about installment terms personally, or potentially through the deputy director, whose authority to act in the director's stead is governed by a separate statute not cited by the parties. *See* ORS 305.065. The department has always had sufficient personnel to comply with ORS

305.890(1),[4] but it did not do so in 2015 in taxpayer's case. The fact that additional personnel now are available does not make taxpayer's case moot, at least when the relief taxpayer seeks is a declaration of his right to have the department comply.

Similarly, as to taxpayer's request for an injunction, the court sees nothing in the filing of the 2016 Declaration that changes the likelihood that the department will seek to collect taxpayer's tax debt from third parties between the end of this case and the effective date of any future installment agreement. If the court were to issue the injunction, suspending collection clearly would have a sufficient "practical effect" to make taxpayer's first claim not moot. The filing of the 2016 Delegation is insufficient to render taxpayer's first claim moot. *See Lavitsky*, 158 Or App at 663.

2. *Merits of Taxpayer's First Claim*

ORS 305.890(1) affords taxpayer a right to enter into an installment agreement to pay the tax he owes, conditioned upon the department's director (or another employee acting by the director's authority) determining that the agreement will facilitate collection. The parties have stipulated that the director "did not personally determine whether the requested agreement would facilitate collection." Accordingly, the question is whether a valid delegation was in place pursuant to ORS 305.057.

The court finds three requirements in ORS 305.057. First, the director must delegate a power to another department employee. Second, the director must designate that employee in writing. Third, the written designation must be filed with the Secretary of State. The parties have stipulated that the director "did not have a written delegation on file with the Secretary of State that explicitly referred to installment agreements under ORS 305.890." This stipulation does not fully address any of the three requirements. As to the first two requirements, the stipulation leaves open

---

[4] *Cf. Blue Iguana, Inc. v. OLCC*, 258 Or App 535, 546, 310 P3d 720 (2013) (OLCC director personally signs every adjudicated decision).

whether any delegation existed—written, oral, or implied.[5] As to the third requirement, the stipulation declares only that nothing in the delegation on file at the time (2015) "explicitly" referred to installment agreements.

The wording of the stipulation raises the question whether the 2013 Delegation can be read to impliedly cover installment agreements under ORS 305.890. To answer this question, the court must first examine the purpose of the designation requirement in ORS 305.057 as applied to installment agreement authority under ORS 305.890(1). The text of ORS 305.057 is silent as to the purpose of its requirements, as is its legislative history,[6] but its basic purpose is apparent from the statutory context.

The context first reveals that ORS 305.890(1) is not unique; the legislature often decides to vest a particular power in the director rather than in the department as an agency. Although ORS 305.015 entrusts the overall administration of the tax laws of Oregon to both "the Department of

---

[5] The record also includes the two PAPs, which provide standards as to payment plans for revenue agents in the department's collection unit. The PAPs and accompanying declarations seem to imply that certain department employees could consider requests for installment agreements, but the court nowhere finds a delegation to them from the director.

[6] The bill that enacted ORS 305.057 was the enabling act that created the department and abolished its predecessor, the State Tax Commission. The legislative history does not discuss the provisions that were later codified as ORS 305.057 or its companion statute ORS 305.065, which requires the director to file with the Secretary of State any order designating a deputy director. Or Laws 1969, ch 520, §§ 7(3), 8. The present text of ORS 305.057 has been unchanged since enactment. The court also has reviewed the legislative history of ORS 184.635(2), enacted the same year, which contains language similar to ORS 305.057 (with the filing requirement set off in its own sentence), but the relevant language was part of the initial proposed bill and received no discussion during the legislative process. Or Laws 1969, ch 599, § 6. ORS 183.325, however, is of some interest to the court. That statute appears in Oregon's Administrative Procedures Act, and provides for the delegation of rulemaking authority of agencies. Originally, ORS 183.325 only required a delegation of authority to be made in writing. Or Laws 1979, ch 593, § 10. However, it was amended in 1993 to require that a "delegation of authority under this section must be made in writing and filed with the Secretary of State before the filing of any rule adopted pursuant to the delegation." Or Laws 1993, ch 729, § 1. Without assigning any weight to the legislative history of the 1993 amendment of ORS 183.325, the court notes that certain statements suggest that the purpose of the filing requirement may include assisting the Secretary of State in verification of the authority of certain individuals submitting rules for publication. Exhibit A, Minutes, House Committee on Rules and Reorganization, HB 2262, Jan 27, 1993, 2 (comments by Professor William Funk).

Revenue and its director," the tax statutes assign numerous powers to the department, some of them broad and others specific.[7] The legislature has, however, assigned an array of specific powers to the director, including the use of particular enforcement and collection tools as well as administrative powers such as the authority to call meetings of county assessors, procure supplies for the agency, and extend statutory periods of limitations in an emergency.[8] The Oregon Supreme Court previously has given effect to the distinction between powers vested in the director or in the department. *See Okorn v. Dept. of Rev.*, 312 Or 152, 818 P2d 928 (1991) (rejecting taxpayer's argument that department's assessment of income tax was invalid due to lack of written, filed delegation under ORS 305.057, where statute had vested determination and assessment authority in the department rather than in the director). There is no doubt that the statute at issue in taxpayer's first claim vests installment agreement authority in "the director," as the statute uses that phrase around a dozen times. *See* ORS 305.890.

Second, statutory context shows that the overall purpose of ORS 305.057 is to provide public notice. The identity of the director is a matter of public record, as the director is appointed by the Governor and confirmed by the Senate. ORS 305.035(1)-(2). When the director delegates a power to another department employee, ORS 305.057 requires the director to designate that employee in writing and to file the

---

[7] These include the power to "administer and enforce" the personal income tax laws (ORS 316.032(1)), the power to make administrative rules (ORS 305.100), and the authority to enter into settlements with taxpayers as to the amount of tax owed (*see* ORS 305.150).

[8] *See, e.g.*, ORS 118.300 (approve sureties for deferred payment of estate tax); ORS 279A.050 (conduct, supervise, and manage procurement for the agency in accordance with the procurement code and administrative rule); ORS 305.120 (request assistance to institute and conduct prosecutions for violations of the laws in respect to the collection of public taxes and revenues); ORS 305.157 (issue an order extending a statutory period of limitation); ORS 305.182 (certify UCC warrants for unpaid taxes); ORS 305.190(1) (subpoena and examine witnesses, administer oaths, and order production of books or papers); ORS 305.200 (certify witness fees and mileage); ORS 305.612 (enter into an intergovernmental reciprocal agreement with the United States for the purpose of engaging in the offset of federal tax refunds and other federal payments); ORS 305.850(3) (assign accounts to a private collection agency); ORS 306.150(2) (call a meeting of the county assessors and provide for payment of their necessary traveling expenses); ORS 308.636 (correct assessment roll to reflect omitted property); ORS 314.419(1) (issue an execution order directing seizure of property subject to a tax lien).

designation with the office of the Secretary of State, which is charged with "keep[ing] a fair record of the official acts of the *** Executive Branch." Or Const, Art VI, § 2. The apparent purpose of the filing is to provide general notice, delivered to the constitutional repository of public records, that enables any interested person to identify the department employee or employees designated to act in delegated matters.

The relevance of notice of a designation under ORS 305.057 depends on the particular power delegated and on the relationship of the notice recipient to the taxpayer or other person affected by the exercise of delegated power. For example, public notice of delegations allows: the state treasurer to verify the authority of department personnel requesting the issuance of checks for witnesses the department calls in the course of an audit (*see* ORS 305.200); a district attorney or the state attorney general to verify the validity of a request for assistance in a criminal tax prosecution (*see* ORS 305.120); and the Internal Revenue Service to verify its countersignatory before entering into an intergovernmental agreement to offset taxes due against refunds owed (*see* ORS 305.612). Consistent with this purpose, the format of the 2013 and 2016 Delegations makes it easy for an official or a member of the public to confirm at a glance that the department employee who is purporting to act is authorized to do so: Each delegation lists the name of an individual employee at the beginning of a new line of text, then identifies the specific section of each subject statute in a freestanding, indented subparagraph beneath that line.

Keeping in mind this notice function, the court next turns to whether the 2013 Delegation, which was in place during the parties' negotiations, *implicitly* designated any employees to make installment agreement determinations. The court concludes that it did not. The 2013 Delegation clearly did designate and authorize one or more employees to undertake certain specific income tax collection activities: certifying "UCC warrants" for unpaid taxes under ORS 305.182; assigning accounts to a collection agency (ORS 305.850(3)); and ordering a sheriff to seize property subject to a tax lien (ORS 314.419(1)). Each of these three activities

is a collection tool that the director may choose to employ in his or her discretion.[9]

However, as the parties have stipulated, the 2013 Delegation nowhere mentions installment agreements, nor does it cite ORS 305.890. Each of the three explicitly named collection tools is separate and independent. There is no necessary link among them such that delegation of one implies the delegation of another. Moreover, nothing in statute suggests that installment agreements must be considered before the director may resort to the collection tools explicitly delegated in the 2013 Delegation. Therefore, the court cannot infer that the director in 2013 delegated his powers under ORS 305.890 as a necessary predicate to, for example, assigning accounts to a collection agency. The director then in office might simply have intended to only delegate the *named collection tools* in the 2013 Delegation while *retaining* the power to consider installment agreements to himself and his deputy.

Given the legislature's directive to the director to give public notice of a delegation to another employee, and the clear and specific manner in which the director has designated employees to assume numerous other functions delegated to the director, it would not be reasonable to find that any of the specific designations in the 2013 Delegation impliedly encompasses the consideration of installment agreements.[10]

Because the court concludes that the director did not satisfy the requirements of ORS 305.057, the next question is whether his failure to file a written delegation before another department employee considered or offered an installment agreement violated taxpayer's right pursuant

---

[9] *See* ORS 305.182(1)-(2) (providing the department "may file warrants issued against any taxpayer" with the Secretary, and requiring the director to certify the warrants); ORS 305.850(3) (providing the director "may assign to the collection agency *** any of the taxes, penalties, interest and moneys due the state"); ORS 314.419(1) (providing that a lien "may be foreclosed" if the director "issue[s] an order directed to the sheriff *** describing the property subject to the lien, and commanding the sheriff to seize the property specified and sell it to pay the amount shown on the order to be due").

[10] The 2016 Delegation, filed after taxpayer commenced his action in the Magistrate Division, specifically cites ORS 305.890 and specifically refers to "installment payment plans."

to ORS 305.890(1). In contrast to many of the circumstances discussed above, the notice served by a written, public delegation of authority under ORS 305.890(1) appears primarily directed to taxpayers themselves, rather than to third persons such as state or local officials outside the department. The court derives this conclusion from the context of several other provisions enacted as part of the TBOR, all of which show an intention to require the department to communicate directly with taxpayers, and in particular to specify details about the department's audit and collection processes in ways designed to ensure transparency and accountability in those processes. *See* ORS 305.860 (requiring the director to prepare and distribute a nontechnical statement explaining taxpayer rights during the department's audit, appeal, refund, and enforcement processes); ORS 305.875 (listing six rights of a taxpayer in "any meeting or communication with the [d]epartment," including rights to explanations of the audit, administrative appeal and collection processes, and the right to record meetings); ORS 305.880 (allowing taxpayer to invoke a right to have interest or penalties waived if a department employee misleads a taxpayer); ORS 305.885 (right to a "clear explanation" of the basis for an underpayment in the initial communication of any underpayment).

Against this backdrop, the court concludes that the legislature's decision to vest installment agreement authority specifically in the director, rather than in the department as an agency, is designed to notify taxpayers which employees will decide the critical question whether to allow installment payments in their case. If not the director personally, then the decision-maker must be someone whom the director has publicly identified. Similar to another provision of the TBOR, this information tells a taxpayer who bears the responsibility if the taxpayer feels aggrieved. *See* ORS 305.895(2)(d) (prewarrant notice must inform taxpayer "the name, office mailing address and office telephone number of the person issuing the warrant" for purposes of "questions or complaints" concerning the warrant).

Although this right to information is limited in scope, the court concludes that the department clearly violated it in this case. The "payment agreement" that the

department mailed to taxpayer on September 2, 2015, was the last document in the record that the parties exchanged in their negotiations. That document identifies its sender only by the name "Cathy #18" and the title "Revenue Agent." Nothing in that document, or in any other document in the record, names any individual at the department who determined that the agreement would facilitate collection, much less whether that individual had been delegated authority to do so. At least in the absence of a designation filed with the Secretary of State, the department's correspondence with taxpayer contravenes the letter and spirit of the statutes requiring the director either to personally decide on an installment agreement or to publicly identify which other department employee would do so.[11]

3.   *Relief Sought in First Claim*

a.   Declaratory Relief

A request for declaratory relief is a request for the court to use its power to declare the rights, status, and other legal relations of a party. ORS 28.010. The court may issue a declaratory judgment "whether or not further relief is or could be claimed." *Id.* "However, declaratory relief is available only when it can affect *in the present* some rights between the parties; that is, *** there must be a justiciable controversy between the parties on 'which judgment may effectively operate.'" *Barcik*, 321 Or at 188 (quoting *State Farm Fire & Cas. v. Reuter*, 294 Or 446, 449, 657 P2d 1231 (1983)) (emphasis in original).

Taxpayer has made two requests for declaratory relief as to this claim. First, he seeks:

---

[11] The department asserts that a ruling in favor of taxpayer on his *third* claim potentially would affect tens of thousands of payment plans currently in place. However, the department has not expressed a similar concern regarding a ruling on taxpayer's first claim, presumably because the department's practice is to agree to terms of a payment plan that will pay the tax debt within the shortest period possible, often 12 to 18 months. Taxpayer commenced his action in the Magistrate Division in October 2015, and the department filed its 2016 Delegation about two months later. In any event, the court today holds only that the department violated taxpayer's right in the making or consideration of an *offer* (or counteroffer) for an installment agreement; the parties agree that they never entered into a contract. The court expresses no view on whether the failure to properly designate an employee could affect any otherwise enforceable contract.

"A declaratory judgment stating that Department of Revenue employees lack the authority to offer or enter into installment agreements in the absence of a written delegation of the Director's authority to determine whether an installment agreement will facilitate collection, and that such delegation must be filed in the office of the Secretary of State."

Taxpayer's second request is for:

"A declaratory judgment stating that Defendant failed to offer plaintiff an installment agreement that meets the requirements of ORS 305.890."

Taxpayer's first request refers generally to all department employees and all installment agreements and thus asks the court to go beyond declaring the rights of the parties in the controversy before the court. For that reason, the court rejects taxpayer's first request.

Taxpayer's second request does not suffer from overbreadth, as it would apply only to him. However, the request seeks a ruling on the validity of the department's determination in 2015. Read in isolation, the request does not "declare" the present rights of a party to guide that party's future conduct. *Barcik*, 321 Or at 188. However, taxpayer's later arguments make clear that he continues to want an installment agreement for the tax he undisputedly owes, and that he is asking the court to declare his rights so that he can resume negotiations with the department. The department acknowledges that taxpayer wants a new installment agreement, but the department asserts (without reference to a factual declaration or to legal authority) that a declaration would have no legal effect, as taxpayer is always free to make a new request for an installment agreement. The court concludes that, on the record before it, a declaration of rights is appropriate for future negotiations over an installment agreement. A general declaration will suffice, given the amount of time that has passed and the possibility that any number of facts may have changed. The court grants the substance of taxpayer's second request and is prepared to declare in its judgment that taxpayer has a present right to an installment agreement if the director or

a department employee whom the director has properly designated under ORS 305.057 determines that an installment agreement will facilitate collection.

### b.   Injunctive Relief

"An injunction is a judicial order requiring a person to do, or refrain from doing, certain acts." 43A *CJS Injunctions* § 1 (Aug 2018 Update); *see generally Wiegand v. West*, 73 Or 249, 144 P 481 (1914) (discussing the prospective nature of injunctive relief). "An injunction is an extraordinary remedy, to be granted only on clear and convincing proof of irreparable harm when there is no adequate legal remedy." *Knight v. Nyara*, 240 Or App 586, 597, 248 P3d 36 (2011) (citing *Wilson v. Parent*, 228 Or 354, 369-70, 365 P2d 72 (1961)). To qualify for injunctive relief, the claimant must demonstrate that there is a cognizable threat of continuing harm stemming from conduct that is probable or threatened. *Eagles Five, LLC v. Lawton*, 250 Or App 413, 422, 280 P3d 1017 (2012); *see also LeVasseur v. Armon*, 240 Or App 250, 259, 246 P3d 1171 (2010); *McCombs et al v. McClelland*, 223 Or 475, 485, 354 P2d 311 (1960).

Taxpayer asserts that he "will be in immediate danger" of "enforced collections," including "garnishment or asset seizure," when his lawsuit ends and the stay of collection under ORS 305.565(1) terminates. He requests:

> "An order enjoining Defendant from enforcing collections through garnishment or asset seizure before offering plaintiff an installment agreement that *** has been determined to facilitate collection by either the Director of the Department of Revenue, or a Department of Revenue employee authorized to make such determinations via written designation of authority filed with the Secretary of State's office."

The court concludes that taxpayer has failed to carry his burden to show *clear and convincing proof* of irreparable harm. *Knight*, 240 Or App at 597. The court does not decide whether any principle of law requires the department to suspend any collection activities during good-faith negotiations over installment agreements. However, even if the department is required to suspend collections, such that taxpayer would be "harmed" by continuing collections,

taxpayer has not shown clear and convincing evidence of a risk that the department will violate such a requirement.

The evidence of the parties' dealings to date does not support taxpayer's position. Although there is evidence that the department is *prepared* to immediately begin collecting his tax from third parties, inasmuch as the department issued distraint warrants in June 2015 and notices of its intent to offset federal tax refunds on August 11, 2015, there is no indication that the department actually used those tools to force collection from third parties in 2015 or, if so, that those actions occurred during negotiations with taxpayer. The only evidence as to the start date of the prior negotiations is that taxpayer apparently first submitted a financial statement to the department requesting an installment agreement on August 14, 2015, after the department had already issued the warrants and the notice of its intention to offset taxpayer's federal tax refund. Oral negotiations *might* have begun earlier, and the department *might* have been collecting from third parties during those discussions, but taxpayer offers no evidence of that.[12]

In summary, given the record in this case, regardless of whether the department has legal authority to try to collect taxpayer's tax debt from third parties while simultaneously resuming negotiations with taxpayer over installment terms, taxpayer has not shown by clear and convincing evidence that there is a risk that the department will do so. The court denies taxpayer's request for injunctive relief.

---

[12] The following additional facts tend to undermine any evidentiary basis for taxpayer's request. First, in each of its collection notices, the department provided taxpayer a document called "Your Rights as an Oregon Taxpayer." In that document the department explains that it prefers to work with taxpayers so that they can pay their tax voluntarily. Second, although the 2015 negotiations ended unsuccessfully, with a wide disparity between the parties' offers, the record provides no indication that either party acted in bad faith. At least some, and perhaps the bulk, of the amount separating the parties appears to relate to a principled dispute over whether taxpayer's attorney fees incurred in representing taxpayer in the collections matter are an expense that the department must allow in setting a monthly payment amount. Finally, although not part of the factual record, the court notes that the department argued that taxpayer is free to request another installment agreement from the department and characterized taxpayer's concerns about immediate forced collection as "presum[ing] too much," while agreeing that "forced collection is possible *if [the parties] cannot agree* on an installment arrangement." (Emphasis added.)

2.  *The Court Need Not Decide Taxpayer's Third Claim*

Because the court concludes that the department denied taxpayer his right to enter into an installment agreement whose terms have been considered by the director or an authorized delegate, the court need not decide taxpayer's third claim that the department's consideration of his application was in error, or what standard of judicial review applies to that consideration. If taxpayer asserts his right anew, or if the department decides on its own to consider an installment arrangement, the department no doubt will make a fresh determination based on the facts as they stand at that time rather than rely on past income, expense, and asset information. *See Courter v. City of Portland*, 286 Or App 39, 46, 398 P3d 936 (2017) (quotation marks omitted) (stating "a claim is ripe for adjudication if it involves present facts, as opposed to future events of a hypothetical nature").

C.  *Taxpayer's Second Claim: Rulemaking*

Taxpayer's second claim is that the department is required to promulgate administrative rules defining the term "facilitate collection" in ORS 305.890(1) before the director or a delegate can determine whether an installment agreement facilitates collection of a tax liability. ORS 305.890(1) states:

> "A taxpayer shall have the right to enter into a written agreement with the Department of Revenue to satisfy liability for payment of any tax in installment payments if the Director of the Department of Revenue determines that the agreement will *facilitate collection* of such liability."

(Emphasis added.) No provision of the TBOR expressly requires the department to adopt administrative rules with respect to ORS 305.890(1); therefore, the question is whether, applying established principles of statutory interpretation, the court discerns in the statutes regulating the department an "implicit directive from the legislature for rulemaking." *See Trebesch v. Employment Division*, 300 Or 264, 270, 710 P2d 136 (1985). As a tool in this inquiry, the Oregon Supreme Court has identified three factors for the court to consider, namely, the "character of the statutory term in dispute," the "authority delegated and the tasks

assigned to the agenc[y]," and the "structure by which the agenc[y] execute[s] [its] task[]." *Id.*

### 1.  *Character of the Term*

The term at issue is "facilitate collection," as used in ORS 305.890(1). The court in *Trebesch* acknowledged that, absent an explicit statutory directive to promulgate rules, "the breadth and kind of responsibility delegated to the agency by the statutory term (*fact-finding, applying an ambiguous law, or developing policy*) will be one, but not a dispositive, factor which may indicate an implicit directive from the legislature for rulemaking." 300 Or at 270 (emphasis added). Other opinions describe these three broad categories as consisting of "precise" or "exact" terms requiring only fact-finding; "inexact" terms requiring agency interpretation; or "delegative" terms, meaning that the agency must make a legislative policy determination. *See Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980); *Coffey v. Board of Geologist Examiners*, 348 Or 494, 503 n 12, 235 P3d 678 (2010); *Blue Iguana*, 258 Or App at 544-46.

The Supreme Court recently provided guidance on these categories in a case involving the appropriate amount of deference to an agency decision with respect to its application of a statutory term. *See OR-OSHA v. CBI Services, Inc.* (*CBI*), 356 Or 577, 584-85, 341 P3d 701 (2014). In *CBI*, the Supreme Court identified four inquiries relevant to the type of term. First, the court should compare the term to those that have already been held to be delegative in nature. *CBI*, 356 Or at 590. Second, the court should consider whether the term is defined by statute or instead is readily susceptible to multiple interpretations. *Id.* Third, the court should consider "whether the term in contention requires the agency to engage in policy determination or make value judgments, as opposed to interpreting the meaning of the statute." *Id.* Finally, the court should consider the context to see "whether other provisions suggest that the legislature did or did not intend a term to be regarded as delegative." *Id.*

### a.  Comparison to Other Delegative Terms

The court has found no case determining that the term "facilitate collection" itself is delegative in nature.

Some terms that the Supreme Court has found to be delegative include "good cause," "fair," "undue," "unreasonable," "unprofessional conduct," and "clearly an excessive remedy." *Springfield Education Assn.*, 290 Or at 228; *Bergerson v. Salem-Keizer School District*, 341 Or 401, 412-13, 144 P3d 918 (2006); *see also U.S. Bancorp v. Dept. of Rev.*, 19 OTR 266, 288-89 (2007) (characterizing the phrases "fairly and accurately" and "fair and equitable" as "delegating policy-making discretion" to the department to make income tax rules that are "legislative" in character). "Facilitate collection" does not require the department to make fundamental value judgments or to balance competing policy concerns, in contrast to terms such as "fair" or "unreasonable" or "excessive." However, the meaning of "facilitate collection" is also not so obvious or plain as "30 days" or "21 years of age"; to apply it, the department must do more than simply tick off items on a checklist of objectively verifiable facts. *Cf. Springfield Education Assn.*, 290 Or at 223. The comparison approach places the term "facilitate collection" somewhere between the examples of delegative and exact terms; the term therefore appears to be an inexact term that expresses complete legislative meaning but with less precision than an exact term. *CBI*, 356 Or at 585.

> b.   Statutory Definitions; Ambiguity

The court next considers whether the term "facilitate collection" is defined by statute or whether the meaning can otherwise be determined by applying the ordinary tools of statutory construction, including analysis of the text and statutory context, any relevant legislative history, and pertinent maxims of statutory construction. *See CBI*, 356 Or at 584-85 (citing *State v. Gaines*, 346 Or at 171-72; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993)). The court will consider each term separately before considering them together.

The term "facilitate" is not defined in statute. "In the absence of evidence to the contrary, we assume that the legislature intended words of common usage to be given their ordinary meanings." *CBI*, 356 Or at 589 (citing *Ogle v. Nooth*, 355 Or 570, 578, 330 P3d 572 (2014)). *Webster's Third New International Dictionary* defines "facilitate" as, "1: to

make easier or less difficult : free from difficulty or impediment," and "2: to lessen the labor of (as a person)." *Webster's Third New Int'l Dictionary* 812 (unabridged ed 2002). One example given by *Webster's* is to make easier or less difficult the execution of a task. *Id*.

Likewise, the term "collection" is not defined in statute. *Webster's* defines it as "the act of collecting (as taxes by a tax collector)." *Webster's* at 444. The term "collecting" is a conjugation of the verb "to collect," which means "to receive, gather, or exact from a number of persons or other sources." *Id*. As an example, the dictionary quotes the Sixteenth Amendment of the United States Constitution, which states: "the Congress shall have the power to lay and collect taxes on incomes, from whatever source derived * * *." *Webster's* at 444 (quoting US Const, Amend XVI). The term also means "to claim and receive in payment or fair recompense," or "to present as due and receive payment for." *Id*.

The term "facilitate collection" joins two words of common usage. Neither party has argued that the term "facilitate collection" is a term of art, such that it might have a special meaning that differs from the combination of its two parts. *See Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296-97, 337 P3d 768 (2014). The legislative history points to no special meaning of either word separately or of the phrase as a whole. Accordingly, the court concludes that the term "facilitate collection" means to make easier the gathering or receipt of tax moneys.

Taxpayer raises the question: easier for whom? Perhaps reasoning that an "agreement" requires the assent of both parties, taxpayer challenges the possibility that the legislature intended the director to evaluate whether an installment agreement makes it easier for *the department*. Citing no evidence or supporting authorities, taxpayer speculates that wage garnishment and other asset seizure remedies are likely the easiest ways for the department to collect tax. Based on that premise, taxpayer seeks to characterize the term as ambiguous and in need of definition by rule.[13]

---

[13] Taxpayer claims that "facilitate collection" could have alternative meanings ranging from maximizing the amount collected to minimizing the department's effort, or perhaps that the term implies a duty to use good faith in determining a taxpayer's ability to pay.

The problem is that taxpayer's premise is without foundation; one could just as easily speculate that immediately resorting to wage garnishment and asset seizure in every case would tend to backfire by inciting public resistance, making collection overall *more difficult* for the department.

Meanwhile, the text and context of ORS 305.890(1) answer the question. A taxpayer has a right to an installment agreement "if the Director * * * determines that the agreement will facilitate collection of such [tax] liability." ORS 305.890(1). Within that clause, the *director* is the sole actor and is charged with making the determination, and other statutes clearly charge the director's agency with collecting the tax. *See* ORS 305.120(1) ("The Department of Revenue shall see that * * * all taxes are collected * * *."). The fact that both parties need to assent in order to form a contract does not make the scope of the department's duties ambiguous; it means only that the taxpayer is free to reject the department's offer or counteroffer. The court concludes that the ordinary meaning of "facilitate collection" requires the director to determine whether an installment agreement would make it easier for the department to collect the tax.

Perhaps a more relevant question is: easier than what? "Facilitate" is a relative term, as reflected in the comparative adjectives "easier" and "less difficult" and the verb "lessen" in the dictionary definition above. ORS 305.890(1) thus requires the director to use an installment agreement to collect tax, instead of other means of collection, if the installment agreement will result in less burden and difficulty for the department. Without directly addressing this point, the department lists several of its collection tools alternative to installment plans. Nearly all these alternatives require the department to identify, contact, and depend on third parties, such as an employer or financial institution in the case of garnishment (*see* ORS 314.430(4) and ORS 18.854 (referring to the person having "possession, control or custody" of a debtor's property)) or a county clerk and sheriff in the case of distraint warrants and the forced sale of assets (*see* ORS 314.430 (1), (2)). Issuance of a warrant entails a 30-day waiting period in most cases. ORS 314.430(1). Some collection alternatives come with restrictions on the type of property

that may be seized or the amount that can be collected at any one time. *See, e.g.*, ORS 18.345(1) (exempting 16 categories of personal property); ORS 18.385(1) and (6) (generally exempting 75 percent of the disposable earnings of an individual). The TBOR itself adds certain restrictions on the issuance of a warrant, primarily additional notice requirements. *See* ORS 305.895. The court concludes, based on this statutory context, that "facilitate collection" means that the department must compare (1) the amount the department will likely collect by directly interacting with the taxpayer to negotiate an installment contract to which the taxpayer agrees, with (2) the amount the department will likely collect using other tools, in both cases taking into account other appropriate factors, which might include direct and indirect costs of collection, the likelihood of success, and the potential speed of collection.[14]

The parties look beyond the text and context of ORS 305.890(1) to portions of the legislative history of the TBOR. The court now considers those materials, along with additional legislative history that the parties did not cite. First, by way of background, the TBOR was not enacted as a freestanding act; rather, the TBOR comprised 10 sections out of 92 in House Bill 2209. *See* Or Laws 1989, ch 625, §§ 65-74. One legislator described the bill as the session's "reconnect bill * * * that also included many other non-reconnect issues," referring to Oregon's routine process, approximately every one or two years, of updating state income tax law to either conform to changes in the federal Internal Revenue Code or to identify changes to reject. Minutes, House Committee on Revenue and School Finance, Apr 20, 1989, 4.

Taxpayer relies on a report of the Oregon Society of Certified Public Accountants, whose representatives testified in committee hearings. OSCPA Report, 12.1-12.2; *see also Christensen I*, 22 OTR at 391. Taxpayer quotes a portion of the OSCPA Report's introduction to the then-recently adopted federal taxpayer bill of rights:

"This taxpayer bill of rights is a very significant body of legislation for the average taxpayer. It is a collection of

---

[14] The court does not determine whether the director or department must make an individually tailored accounting of likely costs and collections in each case.

provisions designed to clarify and strengthen taxpayer rights, better inform them of their rights and provide more alternatives to get relief from IRS action. The Oregon Department of Revenue is strongly encouraged to review its practices and procedures in light of the federal action and conform where possible. In the spirit of conformity, a set of uniform procedures that taxpayers can generally follow or be subject to should minimize confusion between federal and Oregon law in this area."

OSCPA Report at 12.1. From this statement, taxpayer argues that the legislature "anticipated that the Department would adopt a set of uniform procedures to provide guidance and certainty for taxpayers in the collection process. Without regulations, there is no uniformity in the Department's procedures." There are at least two problems with this argument.

First, although committee members certainly considered the OSCPA Report throughout their hearings, the court does not automatically attribute to legislators any intentions expressed in the OSCPA Report, which was an exhibit proffered by a third-party organization. Even if the court were so inclined, the court notes that the passage on which taxpayer relies discusses *practices and procedures*, not administrative rules.[15] *Id*. Nothing in the TBOR portions of the OSCPA Report discusses rulemaking for any purpose, including to set standards for the making of installment agreements.[16]

---

[15] The record shows that the department did set out its practices and procedures in some detail, although those PAPs were distributed only internally. At the court's request, the parties submitted additional briefs on whether the PAPs and the department's financial calculator *constituted* administrative rules even though the department did not promulgate them as such. Both parties agreed that the PAPs are "internal management directives," which are excepted from the definition of an administrative rule. Both parties also agreed that the department's financial calculator is not an administrative rule.

[16] In addition, it is not clear that the quoted passage has anything to do with the *initial* making of installment agreements. The entire OSCPA Report contains only one sentence specifically addressing installment agreements, and that sentence states that "[t]he [federal] Act establishes specific conditions under which the IRS may *change* or *terminate* taxpayer installment agreements for paying tax." OSCPA Report at 12.2 (emphases added). Consistent with that emphasis, four of the five subsections of ORS 305.890 address the conditions in which the director may change or terminate an installment agreement.

Second, testimony by two representatives of the department informed the legislature that the department had already been entering into, and modifying, installment agreements, and that the bill would not substantially change current law or practice. This testimony seems to have prompted praise from the legislators who heard it, rather than a direction to adopt rules. The department's Audit Division Administrator, Jim Manary, had the following colloquy with Representative Bruce Hugo:

"[Jim Manary:]   The next provision [is] conditions for terminating installment agreements. The uh, the federal law has a list of things, including once an installment agreement is in effect, the IRS can now terminate it if the taxpayer giving them—has given them inaccurate information, or refuses to supply accurate information, fails to pay the installment on time, if the IRS determines that the assessment's in jeopardy, that they are trying to move out of the country or do something, um, and also if there's a change in financial circumstance. *Now we follow all that as practice already. One thing we do in addition to this though, we have a regular—we have an ability to change an installment agreement by a supervisor. Now, sometimes for instance one of our revenue agents over the phone will enter into an agreement with a taxpayer, and then sometime down the line the taxpayer will call and say, well I entered into this at the time but I was probably too optimistic about my financial situation and the payments are just too high. I can't meet them. We will have a supervisor review that agreement in terms of their ability to pay and adjust it if that's necessary.* And I don't know if this is covered—I'm not sure that's really covered because the federal specifies only the five areas. We would like to retain the ability to adjust an installment agreement if it appears that it still is not—it's unreasonably high or low, either one. That doesn't happen very often, most often it's when a taxpayer calls and says, well I agreed to it initially but I really can't keep with it very well. So, that's—other than that we're fine with it.

"[Representative Bruce Hugo, Chair:]   *** [A] political question, why did the department not choose to do something like this just from your own PR standpoint?

"[Jim Manary:]   Uh, I guess the primary reason would be that *we didn't see it making substantial changes*, and we didn't see that there were major problems that this would

solve. And it almost, from our perspective *it almost carries the connotation that there are major problems and now we are going to solve them with this bill. And we didn't see those problems; maybe we were too close [to] it from the inside. We didn't see those kind of problems that we needed to address* with—

"[Representative Hugo:]    In this case of the Department of Revenue, I tend to agree with you that the reality is that you are running a good shop. Perception out there is entirely different, and unfortunately we have to deal with perception a lot more than reality."

Tape Recording, House Committee on Revenue and School Finance, Subcommittee on State Government Finance, HB 2209, Feb 16, 1989, Tape 5, Side B (emphases added). In a later hearing, Jim Brown of the department made the following statement, with which no one on the committee took issue:

"I believe our department's view, and I believe the view of the House Revenue Committee as we dealt with these rights is that, it was not designed to substantially alter the current behavior of the Department of Revenue. They were not dealing with the specific abuses, but they *** felt that it would be good tax policy to have those guaranteed rights in the statute even if they weren't being violated by us today."

Tape Recording, Senate Committee on Revenue and School Finance, HB 2209, May 26, 1989, Tape 169, Side B (statement of Jim Brown). Having been informed that the department already entered into installment agreements, the committee members still said nothing—in the bill or in their dialogue with department representatives—about open policy issues that the department should address, by rule or otherwise.

### c.   Policy Determinations or Value Judgments

Taxpayer argues that the term "facilitate collection" delegates policymaking responsibility to the director, as head of the department. The court does not agree. Keeping in mind the definition just arrived at—to make the receipt of tax moneys easier for the department—the determination requires the director to undertake a cost-benefit analysis as between an installment agreement and other alternatives.

While it is true that this determination might incorporate some high-level considerations, for example whether to treat as a cost the damage to the department's reputation and effectiveness that might ensue if the department were to act "more intrusive[ly] than necessary," the requirement to determine whether an installment agreement facilitates collection is pragmatic and administrative, not policymaking. The court concludes that the term "facilitate collection" merely requires the director to apply a policy that the legislature already has made: "The Department of Revenue shall see that revenue officers comply with the tax and revenue laws, *that all taxes are collected*, that complaint is made against any person violating such laws and that penalties prescribed by such laws are enforced." ORS 305.120(1) (emphasis added).

### d.   Context as Indicator of any Delegative Intent

The statutory context discussed above does not indicate that the term "facilitate collection" delegates policymaking responsibility to the department or its director. The parties cite no other relevant statutory context. Nor is the court aware of any. The director is tasked with applying an inexact term and has not been delegated policymaking responsibility.

### 4.   *Authority Delegated and Agency Structure*

### a.   Uniform Adjudication

Taxpayer argues that the department's structure and division of authority imply that the legislature intended the department to promulgate rules to assure uniform application of ORS 305.890(1) to all taxpayers across the state, analogizing to *Trebesch*. However, the statutory scheme and agency structure in this case are materially different from those in *Trebesch*, which involved a worker's claim for unemployment benefits. There, the statutes authorized a group of initial decisionmakers and referees throughout the state to adjudicate claims. The assistant director could both adjudicate claims and make substantive rules. 300 Or at 273. The Supreme Court emphasized that the legislature must have intended that the assistant director communicate his or her interpretations of the law throughout the agency in order to

assure uniform application of the law. *Id.* at 276-77. The court stated:

> "The assistant director does not have the choice to do nothing to provide for consistent interpretation and application of the broad terms of the statute. Some notice of required job search efforts both to those who apply the term and those, like claimant, to whom it is applied, is required when a large volume of frequently recurring decisions is made by * * * employes throughout the state."

*Id.* The Supreme Court went on to hold that the assistant director could choose to do this either through rulemaking or through a series of well articulated decisions that would give guidance to agency decisionmakers, and the court remanded the case so that the assistant director could do one or the other. *Id.* at 274.

The uniformity concerns in *Trebesch* are not present here. When taxpayer applied in 2015, only the director and his deputy were authorized to determine whether an installment agreement would facilitate collection. The 2016 Delegation added only two authorized individuals, both of whom were division heads within the department. A small number of adjudicators in executive roles is less likely to reach disparate results than the far-flung group of initial decision-makers and referees in *Trebesch*. *See Blue Iguana*, 258 Or App at 546 ("[W]e observe that the need for centralized rulemaking in order to ensure statewide consistency is obviated by the fact that OLCC is a centralized agency whose practice is not delegated to several local or specialized offices. Although different administrative law judges adjudicate different cases, all cases are reviewed by OLCC itself and signed by the director."). The legislature's choice to vest installment agreement authority in the director (and the deputy) and the director's practice, both before and after taxpayer filed his appeal, of delegating that authority to only a few additional executives, give the court no basis to infer that the legislature saw a need for rules in order to ensure uniformity.[17]

---

[17] Taxpayer misses the mark in citing *U.S. Bancorp v. Dept. of Rev.*, 19 OTR 266 (2007), which held that the department was required to adopt rules under ORS 314.280 (governing income apportionment for financial organizations and certain other businesses). First, the legislature had expressly directed

b.   Informing the Public

Throughout his argument, taxpayer also urges the court to find a rulemaking requirement on the grounds that taxpayers at large have a need to know what standards the department will apply in deciding whether to approve an installment agreement. It is true that the passage from *Trebesch* quoted above expresses concern that "[s]ome notice" of the steps necessary to receive unemployment benefits must be given to claimants, as well as to agency employees. However, the nature of the decision that the director must adjudicate under ORS 305.890(1) is fundamentally different from the decision whether a claimant has taken adequate steps to find a new job. In *Trebesch*, the Supreme Court decided that an unemployed person needed notice of what he had to do in order to have engaged in "systematic and sustained effort to obtain work." 300 Or at 266. By proving that he or she had satisfied that test, a claimant would become *entitled* to benefits. *See id.* Under that statutory scheme, the court held that the agency could not simply deny benefits on the ground that "[y]our only contacts were your union and two employers[,]" without telling the claimant what further effort would be required. *Id.* (internal quotation marks omitted).

The difference in this case is that a taxpayer's right to an installment agreement does not depend solely on the efforts of the taxpayer. The department must compare whatever terms the taxpayer might offer with other collection alternatives to determine whether the taxpayer's terms make collection easier. That comparison involves cost and risk factors over which the taxpayer has little or no control. Although the legislature could make the policy decision to require the director or the department to disclose the criteria to taxpayers or otherwise make installment negotiations more predictable, the court has found no indication in the TBOR or other statutes that the legislature has done so to date.

---

the department to promulgate rules. 19 OTR at 287-89 (ORS 314.280(1) "clearly states that department action is to be 'under rules and regulations adopted by the department.'"). Second, *U.S. Bancorp*, like *Trebesch,* involved "decentralized decision-making done by auditors," as opposed to the *highly* centralized decision-making process for installment agreements.

### 5. *Conclusions*

The term "facilitate collection," in context, expresses a complete legislative policy requiring the director to offer an installment agreement if an agreement will make collecting the tax easier for the department than by other means. This determination requires the director to weigh costs and benefits, not to make policy. Based on the record, only a small group of high-level employees can adjudicate these determinations, so there is no clear need for rules to ensure uniformity. Although rules might help the public predict the circumstances in which the department is likely to approve an installment agreement, nothing in the text, context or legislative history shows that the legislature wanted the department to address any such concern through rules. Accordingly, as to taxpayer's second claim, the court denies taxpayer's motion for summary judgment and grants the department's cross-motion.

### D. *Taxpayer's Fourth and Fifth Claims: Notice During Collections Process*

The court considers taxpayer's fourth and fifth claims together. In these claims, taxpayer asserts that the department failed to notify him of his rights to appeal the director's determination regarding his installment agreement, and to be represented by an attorney during the collection process, respectively.[18] The department asserts that it notified taxpayer of both rights when it sent taxpayer its publication entitled "Your Rights as an Oregon Taxpayer" (the Publication). Thus, the disagreement in both claims is reduced to the Publication's level of specificity.

Before it can consider the merits, the court must address three procedural issues.

### 1. *Jurisdiction over Claims under ORS 305.860 and ORS 305.875*

In *Christensen I*, the court cautioned:

---

[18] In his amended complaint, taxpayer described his fifth claim broadly as arising from the department's failure to "inform him of his rights under ORS 305.875." On summary judgment, however, taxpayer argued only that the department had failed to notify him of his right to be represented by an attorney during the collections process.

"The relevant analysis is whether this court has jurisdiction over claims arising under *particular statutes*, not general subject matters. This caution even applies to the Taxpayer Bill of Rights, as other provisions may or may not be within the court's jurisdiction, depending on the analysis."

22 OTR at 392 (emphasis in original). Taxpayer's claims under ORS 305.860 and ORS 305.875 do not relate to his claims under ORS 305.890(1), so the court must consider whether it has subject matter jurisdiction over the new claims.[19]

The Tax Court's jurisdiction is granted in ORS 305.410:

"[T]he tax court shall be the sole, exclusive and final judicial authority for the hearing and determination of all questions of law and act arising under the tax laws of this state."

In *Sanok v. Grimes*, 294 Or 684, 697, 662 P2d 693 (1983), the Supreme Court identified two boundaries around Tax Court jurisdiction. First, "questions which must be resolved in order to decide taxability or the amount of tax do arise under the tax laws." *Id.* Second, "a precondition to taxation does not arise under the tax laws if jurisdiction to decide that precondition has been affirmatively located in another court or if a decision on the precondition has substantial non-tax consequences." *Id.* The Supreme Court summed up its holding by stating: "[A] claim is not one 'arising under the tax laws' unless it has some bearing on tax liability." *Id.* at 701.

As in *Christensen I*, taxpayer's claims under ORS 305.860 and ORS 305.875 are not squarely within the court's jurisdiction under the *Sanok* analysis because they relate to collection matters rather than to "questions that might arise *before* a tax liability is determined" or is "final." *See Perkins v. Dept. of Rev.*, 22 OTR 370, 374, 377 (2017). However, applying *Perkins* and *Christensen I*, the court

---

[19] Neither party has addressed subject matter jurisdiction, but the court is required to consider it. TCR 21 G(4); *see Work v. Dept. of Rev.*, 22 OTR 396, 410 (2017) ("Courts are required to consider *sua sponte* the existence or not of subject matter jurisdiction, and subject matter jurisdiction can be raised at any time.").

next analyzes the nature of the claim based on the relief requested. 22 OTR at 375 (citing *Sanok*, 294 Or at 697-98 n 22). Taxpayer requests:[20]

> "An order requiring [the department] to notify taxpayers, in the statement of taxpayer rights required to be published under ORS 305.860, that a Department of Revenue installment agreement determination is appealable to the Oregon Tax Court [and] *** that taxpayers have the right to be represented by an attorney during the collection process." (Brackets added.)

For purposes of its jurisdiction analysis, the court reads the foregoing request as relating to taxpayer specifically, rather than literally to all taxpayers. Even so, the requested order would not affect taxpayer's tax liability or the amount of his tax. However, this is not a case in which the statutory context points to jurisdiction in the circuit courts. *Cf. Perkins*, 22 OTR at 372-74. Rather, as decided in *Christensen I*, the circumstances of the specific claims that might arise under ORS 305.860 and ORS 305.875 are clearly within the Tax Court's jurisdiction. ORS 305.860 provides that the director must prepare and distribute an explanation of taxpayer rights "in all billing or collection notices, *all notices of assessment or deficiency and all notices of refund adjustment or denial* sent to the taxpayer." ORS 305.860(2) (emphasis added). ORS 305.875 sets out the rights that taxpayers have in meetings with the department, including "*audits, conferences*, interviews and any other meeting or communication between the taxpayer and the department." ORS 305.875 (emphasis added). Accordingly, these statutes do not govern *solely* collections, although the matter presently before the court is one of collection. *Cf.* ORS 321.600 (discussed in *Perkins*, 22 OTR at 376). In addition, the legislative history supports a conclusion that the legislature generally understood the Tax Court to have jurisdiction over the TBOR. *Christensen I*, 22 OTR at 391-92. The court concludes it has jurisdiction to consider taxpayer's claims under ORS 305.860 and ORS 305.875.

---

[20] For the reasons stated in *Christensen I*, the court rejects as overbroad taxpayer's further request for a "declaratory judgment stating that ORS 305.890 and the other provisions of the Oregon Taxpayer Bill of Rights fall within the subject matter jurisdiction of the Tax Court." *See Christensen I*, 22 OTR at 392 ("[N]ot everything within the Taxpayer Bill of Rights is necessarily within this court's jurisdiction.").

2.   *Whether ORS 305.860 and ORS 305.875 Are Properly Raised*

The court now addresses whether taxpayer properly raised his fourth and fifth claims for the first time in the Regular Division. The department points out that in the Magistrate Division, taxpayer "appealed from the department's [installment payment] determination \*\*\*, not the collection notices that preceded that determination."

Generally, because proceedings in the Regular Division are *de novo*, ORS 305.425(1), plaintiffs in the Regular Division may proceed on new facts or theories not presented to the Magistrate Division. *See Work v. Dept. of Rev.*, 22 OTR 396, 412 (2017). However, the statutes providing for review in the court contemplate adjudication of a "matter" first in the Magistrate Division. *Freitag v. Dept. of Rev.*, 19 OTR 144, 148 (2006); ORS 305.501(1). In this case, taxpayer clarified his position and added new claims in his first amended complaint, filed in the wake of the court's analysis in *Christensen I*. The court hesitates to dismiss taxpayer's purportedly new claims in a case with little prior guidance on the extent of the court's jurisdiction or the nature of a taxpayer's rights under the TBOR, especially when there is no indication that he is attempting to frustrate the legislative goal of having disputes first heard in the Magistrate Division. *Cf. Fields v. Dept. of Rev.*, 19 OTR 547, 549-50 (2009). However, the court need not decide this issue because, even if taxpayer properly raised these claims in the Regular Division, he is not aggrieved.

3.   *Taxpayer Is Not Aggrieved by the Department's Actions Under ORS 305.860 and ORS 305.875*

The court now considers whether taxpayer has been aggrieved by the department's failures to notify him of his right to appeal from the installment agreement determination and his right to counsel during collection proceedings. The department points out that taxpayer "provides no explanation why such a finding [would] afford[] him any relief in the tax court." If taxpayer is not aggrieved, he may not maintain an action in the court. *See Parks Westsac L.L.C. v. Dept. of Rev.*, 15 OTR 50, 51 (1999) ("If taxpayer is not

aggrieved within the meaning of [ORS 305.275], then taxpayer does not have standing; and, therefore, the court may not exercise its jurisdiction over the claim.").

Taxpayer obviously is dissatisfied with his notices from the department. However, "[t]o be 'aggrieved' is to be something more than just dissatisfied with a result." *NW Medical Lab. v. Good Samaritan Hospital*, 309 Or 262, 268, 786 P2d 718 (1990). Moreover, taxpayer's status as a taxpayer does not automatically confer standing on him to challenge the actions of the department. *Id.*; *see also Brummell v. Dept. of Rev.*, 4 OTR at 172 (quoting *Nicholas v. Lawrence*, 161 Va 589, 592-93, 171 SE 673 (1933)). Taxpayer must "have an interest in the outcome—an interest beyond that shared with the general public—such as pecuniary or other interest peculiar" to him. *NW Medical Lab.*, 309 Or at 268.

Typically, aggrievement in the Tax Court is premised on a pecuniary interest, namely the imposition or amount of tax. *See, e.g.*, *Paris v. Dept. of Rev.*, 19 OTR 519, 521-22 (2008); *Sherman v. Dept. of Rev.*, 17 OTR 322, 323 (2004); *Parks Westsac L.L.C.*, 15 OTR at 52. Taxpayer has no such pecuniary interest in his fourth and fifth claims. Nor is taxpayer otherwise aggrieved by any omissions or inadequacies in the Publication.

The fact is that taxpayer appealed the director's adverse installment agreement determination, and he was represented by counsel during the collection process. Taxpayer points to no facts showing that he was damaged by omissions in the Publication. His interest in his fourth and fifth claims does not go beyond a general concern to ensure that the department is following the law, a concern equally shared by the general public but insufficient to confer standing on him. *NW Medical Lab.*, 309 Or at 268. As to taxpayer's fourth and fifth claims, without reaching the merits, the court denies taxpayer's motion for summary judgment and grants the department's cross-motion.

## V.  CONCLUSION

As to taxpayer's first claim, there is no question that the director then in office failed to properly delegate authority under ORS 305.057 before having employees of the

department consider taxpayer's application for an install-ment agreement. Accordingly, although the court denies injunctive relief, the court will declare taxpayer's right to have an application for an installment agreement consid-ered by the director or a properly designated employee. However, because taxpayer prevailed on this claim and may now seek a new agreement, the court does not consider his third claim, that department employees erred in consider-ing taxpayer's 2015 application for an installment agree-ment. The court dismisses taxpayer's second claim because the court finds that the legislature did not intend to require the department to promulgate administrative rules before determining whether an installment agreement facilitates collection for purposes of ORS 305.890. The court also dis-misses taxpayer's fourth and fifth claims because there is no evidence that taxpayer was aggrieved by any deficiency in the department's collection notices under ORS 305.860 and ORS 305.875. Now, therefore,

IT IS ORDERED that Plaintiff's motion for sum-mary judgment is granted as to his request for declara-tory judgment pursuant to claim 1, and denied in all other respects.

IT IS FURTHER ORDERED that Defendant's cross-motion for summary judgment is granted as to claims 2, 4, and 5, and denied in all other respects.